## IN THE UNITED STATES DISTRICT COURT FOR THE

## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| -vs- | ) | No.  <u>CR-23-237-SLP</u> |
| | ) | |
| **JEFF WENG and** | ) | |
| **TONG LIN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## UNITED STATES' MOTION *IN LIMINE* REGARDING JURY NULLIFICATION AND TO PRECLUDE DEFENDANT'S ASSERTION OF A STATE LAW OR <u>MISTAKE-OF-LAW DEFENSE</u>

The United States of America by and through Robert J. Troester, United States Attorney, Wilson D. McGarry, Assistant United States Attorney, respectfully moves this Court to enter an order prohibiting Defendants Jeff Weng and Tong Lin from raising a defense related to compliance with state law, arguing mistake-of-law, or inviting jury nullification.

## I. <u>Background</u>

### A. *Brandon Ye and His Fake Amazon Van Lead Law Enforcement to the Wetumka Grow*

On December 1, 2022, during a law enforcement investigation into the black-market distribution of marijuana in the Western District of Oklahoma, law enforcement observed a Mercedes-Benz sprinter van disguised as an Amazon delivery van arrive at a known stash house of a black-market marijuana operation in Oklahoma City, Oklahoma. The

investigation shifted and surveillance was set up on the activities of the fake Amazon van. Through the course of the investigation, law enforcement determined that Brandon Ye used this look-a-like Amazon van to pick up and transport black-market marijuana. Typically, on a near daily basis, Mr. Ye would drive from his home in the Amazon van to an Oklahoma-based marijuana grow.[1] There, black trash bags full of marijuana would be loaded into the Amazon van. After loading the marijuana into the van, Mr. Ye would drive to one of the stash houses he controlled where the marijuana would be re-packaged into cardboard boxes. Mr. Ye, or one of his associates, would transport the marijuana to one of two warehouses Mr. Ye controlled, where once a week beginning sometime in January 2023, a semi-truck would arrive at the warehouse and be loaded with the marijuana. After the marijuana was loaded into the semi-truck, it left the warehouse and traveled east, out of Oklahoma, and typically to New Jersey.

During the investigation of Mr. Ye's criminal operation, on January 4, January 13, January 27, January 31, 2023, law enforcement surveillance observed Mr. Ye drive the fake Amazon van to a marijuana grow located at 7828 State Highway 9 in Wetumka, Oklahoma (the "Wetumka Grow"), which is located in the Eastern District of Oklahoma. Before arriving at the Wetumka Grow, it was Mr. Ye's practice to park the fake Amazon van at a location near the grow. After parking, someone from the Wetumka Grow would drive to Mr. Ye's location. Mr. Ye would then exit the fake Amazon van and allow the Wetumka Grow employee drive the fake Amazon van to grow facility to be loaded with

---

[1] Parking the van overnight at Mr. Ye's residence was one indication to law enforcement that the van was a fake Amazon delivery van.

marijuana.  After Mr. Ye's fake Amazon van was loaded with marijuana, usually packaged in black trash bags, Mr. Ye would transport the marijuana to a stash location he controlled in Oklahoma City then he would transport the marijuana to one of his two Oklahoma City warehouses where he would ship the marijuana out of state via semi-truck. This unauthorized distribution of marijuana violates Oklahoma medical marijuana laws. *See* Okla. Stat. tit. 63, § 422(C) (2018).

Mr. Ye was arrested on March 31, 2023, after law enforcement executed a search warrant at one of Mr. Ye's warehouses used for shipping marijuana out of state. During the search, law enforcement seized over 2,700 pounds of illegal marijuana which was being placed into cardboard boxes and in turn loaded onto a semi-truck that was parked at the warehouse. On September 11, 2023, Mr. Ye pled guilty to possession with intent to distribute marijuana and possession of a firearm in furtherance of a drug-trafficking crime in CR-23-199-SLP.

### B. OBN Inspection and Execution of Search Warrant at the Wetumka Grow

On February 17, 2023, agents with the Oklahoma Bureau of Narcotics ("OBN") conducted an inspection of the Wetumka Grow. During the inspection, OBN agents noted several violations of state law and regulations regarding growing medical marijuana. For instance, agents observed more than 4,000 marijuana plants without METRC tags.[2]

---

[2]     METRC—whose acronymic trade name is derived from "marijuana enforcement tracking reporting compliance"—is the web-based software platform selected by OMMA as the statewide tracking system used by state authorities to determine if OMMA licensees are in compliance with the state's seed-to-sale system and other regulatory requirements.  Specifically, licensees operating grows are required to register them with Oklahoma Bureau of Narcotics and to affix tags to the plants.  They are also required to

Oklahoma law required the grow to keep records pertaining to all plants on site and past sales and to keep those records readily available. *See* Okla. Admin. Code § 475:25-1-4 (2019); *id*. § 310:681:5-6 (2019).  Mr. Weng was not present for the OBN inspection, but one of the grow workers called Mr. Weng so that he could speak to agents.  According to OBN reports, Mr. Weng identified himself as the manager of the grow, despite being on vacation at the time.

On May 17, 2023, federal and state agents executed a federal search warrant at the Wetumka Grow.  During the execution of the warrant, Mr. Weng and Mr. Lin were present and detained at the Wetumka Grow.

After being read his *Miranda* rights, with the aid of an interpreter, Mr. Lin told agents that he had worked and lived at the Wetumka Grow for five months. Mr. Lin stated that he was shadowing Mr. Weng, whom he identified as the manager, at that location and was working as a management intern. Mr. Weng also spoke to law enforcement. Mr. Weng told law enforcement that he had worked at the Wetumka Grow for nearly two years.  Mr. Weng told agents that he takes care of the paperwork at the grow and finds employees to work at the grow.

During the search, agents seized more than 19,000 marijuana plants and more than 400 pounds of processed marijuana.  Many of the marijuana plants were not properly tagged with the METRC tags.  These tags are required to be placed on every marijuana plant in the building in order to track the seed to sale mentioned in the previous paragraph.

---

document the marijuana produced and the intended destination of the product.

In addition to the surveilled connection to Brandon Ye, the Watonga Grow's failure to comply with the METRC requirements and record keeping requirements were two indicators that the grow was a black-market grow.  A state-licensed entity, for example, cannot sell marijuana to a non-state-licensed entity.  *See* Okla. Stat. tit. 63, § 427.13 (2019) ("All medical marijuana and medical marijuana products shall be purchased solely from an Oklahoma-licensed medical marijuana business, and shall not be purchased from any out-of-state providers.").  Outside of the medical marijuana context, the distribution of and possession with intent to distribute of marijuana remains illegal under state law, *see, e.g.*, Okla. Stat. tit. 63, § 2-401, as marijuana remains a Schedule I substance under Oklahoma's Uniform Controlled Dangerous Substances Act. *See id*. § 2-204.

All of this was, of course, consistent with a black-market marijuana grow, with marijuana being sold out of the back door.[3]  In short, Mr. Weng and Mr. Lin's conduct was illegal under both state and federal law. *See* Okla. Stat. tit. 63, § 2-401; *see* 18 U.S.C. § 841(a)(1).

### C.  Mr. Weng and Mr. Lin's Federal Charges

On June 6, 2023, a federal grand jury in the Western District of Oklahoma returned a one-count indictment charging Mr. Weng and Mr. Lin with drug conspiracy related to the black-market marijuana grow operation.

The Government is filing this motion because it believes that Mr. Weng and Mr. Lin will attempt to argue to a jury that the Wetumka Grow was in compliance with state

---

[3]      Indeed, that is precisely what appeared to be occurring based on law enforcement's investigation in January 2023.

law and that, even if it was not, they thought their conduct was legal.  The Government also believes that, due to the context of this case, Mr. Weng and Mr. Lin may improperly attempt to invite jury nullification.

## II.    Argument

### A.  Mr. Weng and Mr. Lin should be barred at trial from arguing he was in compliance with Oklahoma state law.

As an initial matter, regardless of state medical marijuana laws, "anyone [] who possesses, distributes, or manufactures marijuana for medical or recreational purposes . . . is committing a federal crime." *United States v. McIntosh*, 833 F.3d 1163, n. 5 (9th Cir 2016); *see also United States v. Trevino*, 7 F.4th 414, 419 (6th Cir. 2021) ("State law aside, marijuana remains illegal under federal law."); *see also* 21 U.S.C. §§ 841(a)(1), 856 (a)(2). Federal law does not include an exception for the use and distribution medical marijuana. *See Gonzales v. Raich*, 545 U.S. 1, 27 (2005).

Mr. Weng and Mr. Lin's conduct, as alleged in the indictment, constitutes a federal crime.  They both worked at a marijuana grow in Wetumka, Oklahoma, and appeared to have a positions of some authority—Mr. Weng identifying himself as the manager and Mr. Lin identifying himself as essentially a manager-in-training. State law is not a defense to a federal crime, and under the Federal Rules of Evidence, whether Mr. Weng or Mr. Lin's conduct complied with state law does not have any tendency to make it more or less probable that he violated federal law. *See* Fed. R. Evid. 401. In addition, any potential relevance to an argument associated with compliance with state law is substantially outweighed by a danger of confusing the issues and misleading the jury. *See* Fed R. Evid.

403; *see e.g., United States v. Stacy*, 734 F. Supp.2d 1074, 1084 (S.D. Cal. 2010) (precluding defendant from raising a "'medical marijuana' defense that [defendant] was cultivating and distributing marijuana for medicinal purposes in compliance with state law and had a good faith belief that he was acting lawfully") ("As already discussed, defendant's compliance with state law does not grant him immunity under federal law, and defendant's belief that he was acting lawfully is irrelevant as to criminal liability."); *see also United States v. Lynch*, 903 F.3d 1061, 1074 (9th Cir. 2018) ("Lynch also would not have been entitled to acquittal even if he had shown that he was in compliance with state [marijuana] law, because such compliance was not relevant to the federal crimes he was charged with."); *accord Gonzales v. Raich*, 545 U.S. 1, 29, (2005) ("The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail. It is beyond peradventure that federal power over commerce is superior to that of the States to provide for the welfare or necessities of their inhabitants, however legitimate or dire those necessities may be.") (internal quotations omitted). The fact that a state has decriminalized possession of medical marijuana does not provide a defense to a charged violation of federal drug laws. *See United States v. Henry*, 673 F.3d 285, 291-92 (4th Cir. 2012).

In short, "[m]arijuana remains illegal under federal law, even in those states in which medical marijuana has been legalized." *United States v. Canori*, 737 F.3d 181, 184 (2d Cir. 2013). Pursuant to Fed. R. Evid. 401 and 403, Mr. Weng and Mr. Lin should be precluded from presenting evidence to the jury regarding purported compliance with state law, as it has no bearing on whether he violated *federal* law. And, in any event, as detailed

7

above, the grow that Mr. Weng and Mr. Lin were working at was clearly not in conformity with Oklahoma state law.

### B. Mr. Weng and Mr. Lin should be precluded from raising a mistake-of-law defense.

"[A]s a general rule, ignorance of the law or a mistake of law is no defense to criminal prosecution." *Cheek v. United States*, 498 U.S. 192, 199, (1991); *see also United States v. Allen*, 983 F.3d 463, 469 (10th Cir. 2020); *United States v. Cox*, 906 F.3d 1170, 1190 (10th Cir. 2018).

For instance, in *United States v. Cox*, the defendants tried to assert that they had a valid defense to their federal charges arguing that they had believed or "understood the [state law] to insulate" their conduct "from federal regulation." *United States v. Cox*, 906 F.3d 1170, 1190 (10th Cir. 2018). The Tenth Circuit rejected this proposition, noting that defendants' belief that state law protected their federal criminal conduct was not a defense. *Id.* at 1190 ("The general mistake-of-law rule forecloses [the defendants'] proposed defense—that they wrongly believed, in reliance on the SAPA, that federal firearms regulations didn't reach their Kansas-centric activities.").

Like the defendant in *Cox*, Mr. Weng and Mr. Lin may wish to argue that they thought Oklahoma's regulatory regime governing the cultivation of medical marijuana meant that his conduct was therefore legal under federal law.  But as *Cox* makes clear, Mr. Weng and Mr. Lin's mistake-of-law defense would still not be valid.

While *Cox* forecloses the defendants' mistake-of-law defense here, it is worth noting that other courts of appeal have addressed this question in the context of marijuana

offenses, holding that the general rule that mistake of law is no defense also applies regardless of state marijuana law.  *See, e.g., Trevino*, 7 F.4th at 423 (6th Cir. 2021) (holding that a defendant in marijuana prosecution was not entitled "to present the jury with evidence that he believed his actions were legal"); *United States v. Morales*, 680 F. App'x 548, 551 (9th Cir. 2017) ("[N]either medical necessity nor mistake of law constitutes a defense to federal drug charges."); *United States v. Duval*, 865 F. Supp. 2d 803, 809–10 (E.D. Mich. 2012) (excluding evidence of defendants' ignorance of law or mistakes about federal marijuana laws); *United States v. Wall*, No. CR SAG-19-0500, 2022 WL 1268061, at *4 (D. Md. Apr. 28, 2022) ("Because Mr. Wall's beliefs about the legality or illegality of marijuana under California law is irrelevant to the elements the Government must prove in this case, the Government's motion will be granted, and he will be precluded from introducing any evidence related to any non-federal jurisdiction's marijuana laws."); *United States v. Haymon*, No. 20-4438, 2021 WL 4495813, at *1 (4th Cir. Oct. 1, 2021) ("Additionally, Haymon's contention that his possession of marijuana was lawful under California law, and therefore he lacked the specific intent to violate 21 U.S.C. § 841(a), is not a defense to a charge under the Controlled Substances Act."); *United States v. Jenkins*, 2014 WL 12676280, at *5 (W.D. Mich. Aug. 20, 2014) ("Finally, the supremacy of federal marijuana laws precludes the defenses of good faith, mistake of law, or advice of counsel.").

In sum, case law is clear that Mr. Weng and Mr. Lin should be precluded from arguing mistake-of-law with regard to their marijuana-related conduct.

### C.  Mr. Weng and Mr. Lin should be precluded from inviting jury nullification.

Finally, based on the context of the case and the anticipated defense asserted by Mr. Weng and Mr. Lin, the Government moves in limine to preclude Mr. Weng and Mr. Lin— either through testimony or questions or argument from their counsel—from inviting jury nullification.  The defendants should not be permitted to make arguments that would undermine Congress's determination that marijuana remains a Schedule I controlled substance, or suggest that the illicit sale of marijuana is somehow not illegal.  Tenth Circuit law is clear: "there is no right to jury nullification." *United States v. Courtney*, 960 F. Supp. 2d 1152, 1174-74 (D.N.M. 2013) (quoting *Crease v. McKune*, 189 F.3d 1188, 1194 (10th Cir. 1999)).  Again, the defendants would not be the first defendants to attempt to invite jury nullification in the federal context.  And courts have uniformly precluded defendants from doing so. *See, e.g., Lynch,* 903 F.3d at 1078; *United States v. Scarmazzo,* 554 F. Supp. 2d 1102, 1105 (E.D. Cal. 2008) (excluding evidence of reliance on or compliance with state law, medicinal use of marijuana, and evidence or argument aimed toward jury nullification); *Duval*, 865 F. Supp. 2d at  808–09 ("[T]he Court will not allow evidence or testimony that marijuana has any medical value, should not be a Schedule I controlled substance, otherwise should be legal, or that the defendants had a medical or humanitarian motive for manufacturing and distributing marijuana, as the Court sees no purpose for that evidence other than to ask the jury to acquit despite proof of the elements of the crimes beyond a reasonable doubt.")

## **CONCLUSION**

The United States respectfully requests that the Court prohibit Mr. Weng and Mr. Lin from attempting to assert a defense based on Oklahoma state law, from arguing mistake of law, or to from inviting jury nullification.

Respectfully submitted,

ROBERT J. TROESTER
United States Attorney

s/Wilson D. McGarry
WILSON D. McGARRY
Assistant United States Attorney
Bar Number:  31146
210 Park Avenue, Suite 400
Oklahoma City, Oklahoma 73102
(405) 553-8700 (telephone)
(405) 553-8777 (fax)
wilson.mcgarry@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 21, 2023, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants in this matter.

s/ Wilson D. McGarry
Assistant United States Attorney